SCHNEIDER WALLACE COTTRELL
KONECKY WOTKYNS LLP
Todd M. Schneider (SBN 158253)
Jason H. Kim (SBN 220279)
Kyle G. Bates (SBN 299114)
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
E-mail: tschneider@schneiderwallace.com
         jkim@schneiderwallace.com
         kbates@schneiderwallace.com

Garrett W. Wotkyns (to be admitted pro hac vice)
John N. Nestico (to be admitted pro hac vice)
8501 North Scottsdale Road, Suite 270
Scottsdale, Arizona 85253
Telephone: (480) 428-0142
Facsimile: (866) 505-8036
Email: gwotkyns@schneiderwallace.com
         jnestico@schneiderwallace.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| DENNIS M. LORENZ, as an individual and on behalf of all others similarly situated,<br><br>  Plaintiff,<br><br>  v.<br><br>SAFEWAY, INC.; SAFEWAY BENEFIT PLANS COMMITTEE; GREAT-WEST FINANCIAL RPS LLC; and DOES 1 through 50, inclusive,<br><br>  Defendants. | CASE NO.:<br><br>**CLASS ACTION COMPLAINT**<br><br>1. **ERISA Breach of Fiduciary Duty**<br>2. **ERISA Prohibited Transactions** |

## I. INTRODUCTION

1. Plaintiff Dennis M. Lorenz ("Plaintiff"), on behalf of himself and all others similarly situated, brings this putative class action against Defendants Safeway, Inc., Safeway Benefit Plans Committee (collectively "the Safeway Defendants"), Great-West Financial RPS LLC (dba Empower) ("Great-West"), and Does 1 through 50 under Sections 502(a)(2) and 502(a)(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132(a)(2) and 1132 (a)(3). This action is brought on behalf of the Safeway 401(k) Plan ("Plan") and certain participants and beneficiaries of the Plan.

2. Plaintiff sues Defendants for breaching their fiduciary duties and/or engaging in transactions prohibited by ERISA in connection with "target date funds" managed by non-defendant JP Morgan Asset Management ("JPM") and offered as investment options in the Plan.

3. The Safeway Defendants breached their fiduciary duties to Plaintiff, the putative class, and the Plan by selecting JPM target date funds as investment options for the Plan that charged excessive fees as compared to readily-available alternatives.

4. Furthermore, in connection with selecting the JPM target date funds as investment options for the Plan, the Safeway Defendants also agreed to a "revenue sharing" arrangement whereby a large portion of the fees charged by the JPM target date funds and paid by Plaintiff and the putative class was kicked back to Defendant Great-West (and previously, its predecessor in interest, J.P. Morgan Retirement Plan Services, or "JPMRPS"), purportedly to compensate Great-West / JPMRPS for record-keeping services. In fact, the amount of such fees was far in excess of the reasonable value of such services and thus the Safeway Defendants and Great-West / JPMRPS engaged in transactions prohibited by ERISA.

## II.   JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over Plaintiff's claims under ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), and 28 U.S.C. § 1331 because this action arises under the laws of the United States.

6. Venue is proper in the Northern District of California under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan is administered in this District, the Safeway Defendants reside within this District, Great-West may be found in this District, and/or the alleged breaches of the duties imposed by ERISA took place in this District.

## III.   PARTIES

7. Plaintiff is and was during the relevant times a participant in the Plan and invested his retirement savings in the JPMCB Smartretire Passiveblend 2020 Fund, one of the JPM target date funds that are the subject of this Complaint.

8. The Plan is an employee pension benefit plan within the meaning of ERISA § 3(2)(a), 29 U.S.C. § 1002(2)(a), and an individual account plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34).

9. Defendant Safeway, Inc. is the sponsor of the Plan and, as such, is a fiduciary of the Plan with respect to the conduct and transactions from which its liability arises, specifically designing a menu of investment options for participants in the Plan and negotiating contracts relating to such options.

10. Defendant Safeway Benefit Plans Committee is the administrator of the Plan and, as such, is a fiduciary of the Plan with respect to the conduct and transactions from which its liability arises, specifically designing a menu of investment options for participants in the Plan and negotiating contracts relating to such options.

11. Defendant Great-West is the recordkeeper for the Plan and, as such, is a service provider and "party in interest" under ERISA with respect to the conduct and transactions from which its liability arises, as described below.

12. Previously, the recordkeeper for the Plan was JPMRPS, an affiliate of JPM. JPMRPS was likewise a party in interest under ERISA while serving as recordkeeper. In September 2014, Great-West and/or an affiliate acquired the record-keeping business of JPMRPS. The combined entity does business under the name Empower and is one of the largest service providers in the U.S. defined contribution market, with nearly 7 million participants as of the closing of the acquisition.

13. Does 1-50 are entities and individuals who are additional fiduciaries of the Plan and/or parties in interest with respect to the Plan in connection with the conduct and transactions alleged in this Complaint.

### IV.   THE JPM TARGET DATE FUNDS

14. Target date funds are investment funds designed to allow retirement plan participants to invest in a single fund with a professionally-managed, broadly-diversified portfolio that becomes more conservative as the participant approaches retirement age, typically by shifting the proportion of the fund investing in stocks as compared to bonds. Typically, a retirement plan offers a variety of target date funds referencing dates at five-year intervals (e.g. a 2020 fund, a 2025 fund, etc.) and a participant who chooses to invest in such funds is invested in a single fund with a target date that corresponds to that participant's anticipated retirement age.

15. Prior to 2011, the Plan offered as investment options target date funds managed by Blackrock Institutional Trust Company called the Lifepath Index Funds.

16. Starting in 2011 and continuing to the present, the Plan has offered as investment options target date funds managed by JPM. These funds are: JPMCB Smartretire Passiveblend 2015, JPMCB Smartretire Passiveblend 2020, JPMCB Smartretire Passiveblend 2025, JPMCB Smartretire Passiveblend 2030, JPMCB Smartretire Passiveblend 2035, JPMCB Smartretire Passiveblend 2040, JPMCB Smartretire Passiveblend 2045, JPMCB Smartretire Passiveblend 2050, and JPMCB

Smartretire Passiveblend Income (collectively the "JPM Smartretire Passiveblend Funds").

17. At the time the Safeway Defendants selected the JPM Smartretire Passiveblend Funds, JPMRPS served as the recordkeeper for the Plan and non-defendant JPMorgan Chase Bank, N.A. ("Chase") was the trustee of the Plan. JPMRPS and Chase were, at the time, affiliates of JPM. In September 2014, Great-West and/or an affiliate acquired the record-keeping business of JPMRPS and became the recordkeeper for the Plan.

18. At the time the Safeway Defendants selected the JPM Smartretire Passiveblend Funds, these funds had just been introduced into the retirement investment products market and had no track record of results.

## V. THE EXCESSIVE FEES OF THE JPM SMARTRETIRE PASSIVEBLEND FUNDS

19. During the relevant times, the JPM Smartretire Passiveblend Funds charged participants in the Plan who invested in such funds between 47 and 50 basis points (0.47% - .50%) of the amount invested as a management fee.

20. By comparison, the Blackrock Lifepath Index funds which were replaced by the JPM Smartretire Passiveblend Funds charged only a 13 basis point fee.

21. Alternatives to the JPM Smartretire Passiveblend Funds that were readily available as of 2011 also charged substantially lower fees. Target date funds offered by Vanguard, for example, charge about a 15 basis point fee. The Vanguard target date funds are a popular investment option in 401(k) plans, with a market share of approximately 27 percent as of 2015, which made it the largest provider of target date funds.

22. Net of management fees, the Vanguard target date funds substantially outperformed the comparable JPM Smartretire Passiveblend Funds, as shown in the table below (average of five-year return per fund for the period ending in 2015):



## VI. REVENUE SHARING TO JPMRPS / GREAT-WEST

23.   The management fee charged to participants for investing in the JPM Smartretire Passiveblend Funds included a 20 basis point revenue sharing payment to JPMRPS and later Great-West. This revenue sharing payment was purportedly compensation to JPMRPS / Great-West for record-keeping services in connection with the Plan but, as set forth below, resulted in compensation to JPMRPS / Great-West far in excess of reasonable compensation for such services.

24.   The excessiveness of these revenue sharing payments is illustrated by the fact that the amount invested in the JPM Smartretire Passiveblend Funds (and thus the revenue sharing payments made to JPMRPS / Great-West) more than doubled between 2011 and 2014. At the same time, the number of participants in the Plan (and other related 401(k) plans that offered the JPM Smartretire Passiveblend Funds) actually decreased.

25. The Plan offered the JPM Smartretire Passiveblend Funds through a collective trust, the Safeway Inc. Defined Contribution Plans Master Trust, in which the Plan and two other plans (the Vons Companies, Inc. Pharmacists 401(k) Plan and the Dominicks Finer Foods, LLC 401(k) Retirement Plan for Union Employees) held their investments.

26. As shown below, the total amounts invested in the JPM Smartretire Passiveblend Funds through the Safeway Inc. Defined Contribution Plans Master Trust increased greatly from 2011 through 2014:

|        | 2011        | 2012        | 2013        | 2014        |
|--------|-------------|-------------|-------------|-------------|
| 2015   | 18,054,681  | 19,794,989  | 21,701,311  | 24,350,028  |
| 2020   | 23,131,987  | 28,861,951  | 35,339,858  | 43,053,629  |
| 2025   | 19,324,173  | 24,110,732  | 32,225,022  | 41,359,913  |
| 2030   | 14,643,308  | 19,831,420  | 26,310,034  | 33,855,085  |
| 2035   | 13,165,543  | 17,414,630  | 24,262,579  | 30,486,593  |
| 2040   | 10,246,266  | 13,044,064  | 18,094,659  | 22,064,219  |
| 2045   | 13,897,710  | 18,275,268  | 25,349,788  | 29,000,104  |
| 2050   | 303,294     | 1,673,355   | 4,971,998   | 8,948,585   |
| Income | 7,177,639   | 8,123,322   | 9,648,738   | 11,682,471  |
| **Total** | **119,944,601** | **151,129,731** | **197,903,987** | **244,800,627** |

27. During this same time period, the number of participants with account balances in the three 401(k) plans invested through the Safeway Inc. Defined Contribution Plans Master Trust steadily declined, with a total of 41,363 participants with account balances in 2011, 40,533 in 2012, 40,059 in 2013, and 38,126 in 2014.

28. In other words, JPMRPS / Great-West received greater and greater revenue for providing the same services (in fact, more than double the revenue in 2014 than in 2011) to a smaller number of participants.

29. And the revenue sharing payments generated from the JPM Smartretire Passiveblend Funds were far from the sole source of JPMRPS / Great-West's compensation for record-keeping services. These companies also received revenue

sharing payment from other investments offered through the Plan and direct payments from the Plan for record-keeping services.

30.     The Safeway Defendants could have obtained record-keeping services at a much lower rate, had they: (1) negotiated a per-participant payment for record keeping rather than an asset-based charge (*i.e.* payment based on a percentage of monies invested); or (2) negotiated a lower asset-based charge when it became clear that the amounts invested in the JPM Smartretire Passiveblend Funds were growing so quickly so as to generate a windfall for JPMRPS / Great-West.

## VII.    THE SAFEWAY DEFENDANTS' BREACHES OF FIDUCIARY DUTY

31.     ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires that plan fiduciaries, such as the Safeway Defendants, discharge their duties solely in the interests of plan participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of a similar enterprise.

32.     In the context of selecting investment options for plan participants, the duty of prudence requires that plan fiduciaries investigate the relative performance and fees of available investment options and, based on a thorough investigation, make an informed and reasonable choice of which of those investment options to make available to plan participants.

33.     The Safeway Defendants breached the duty of prudence in connection with selecting the JPM Smartretire Passiveblend Funds because, among other things, these funds charged higher fees than comparable, readily-available funds, had no meaningful record of performance so as to indicate that higher performance would offset this difference in fees, and was managed by a company affiliated with the Plan's recordkeeper, JPMRPS, and trustee, Chase.

34.     Had the Safeway Defendants conducted an adequate investigation of available alternatives, without the influence of JPMRPS and Chase, they would have

selected target date funds with an established record of performance and lower fees, such as the Vanguard target date funds.

35. Had they done so, Plaintiff and the members of the putative class would have achieved higher investment returns because they would have paid lower fees.

36. In this context, the duty of prudence also requires that plan fiduciaries like the Safeway Defendants investigate whether revenue sharing is a reasonable and cost-effective way to pay for administrative services incurred in connection with a plan, such as record-keeping services.

37. Specifically, the Employee Benefits Security Administration of the U.S. Department of Labor Plan has opined that, in the context of a revenue sharing arrangement, "the responsible plan fiduciaries must assure that the compensation the plan pays directly or indirectly to [the service provider] for services is reasonable, taking into account the services provided to the plan as well as all fees or compensation received by [the service provider] in connection with the investment of plan assets, including revenue sharing." Advisory Opinion 2013-03A (July 3, 2013).

38. This same opinion makes it clear that the duty of plan fiduciaries to assure the reasonableness of compensation received by a service provider is a continuing one. "Under section 404(a)(1) of ERISA, the responsible plan fiduciaries must act prudently and solely in the interest of the plan participants and beneficiaries both in deciding whether to enter into, or *continue*, [the revenue sharing arrangement]." *Id.*(emphasis added).

39. The Safeway Defendants breached the duty of prudence in connection with agreeing to the revenue sharing arrangement for the JPM Smartretire Passiveblend Funds because a reasonable investigation would have found that a per-participant fee for record keeping services as opposed to an asset-based revenue sharing arrangement would have resulted in lower fees.

40. This breach of prudence is further evidenced by the fact that the Safeway Defendants agreed to revenue sharing payments for other investment options offered by the Plan, but the percentage amount of such payments for the JPM Smartretire Passiveblend Funds was substantially higher than most of these other options. In 2011, for example, JPMRPS received a five basis point revenue sharing payment from the American Funds Europacific Growth-R fund, a ten basis point revenue sharing payment from the Dodge & Cox Stock fund and the RS Partners-Y fund, and a fifteen basis point revenue sharing payment from the Forward Growth-Institutional Fund. Only two of the funds offered by the Plan (the Pimco Total Return and Chesapeake Core Growth fund) involved a higher revenue sharing payment than the JPM Smartretire Passiveblend Funds.

41. This breach of duty became even more pronounced as the amounts invested in the JPM Smartretire Passiveblend Funds, and thus the revenue paid out to JPMRPS / Great-West, more than doubled between 2011 and 2014, while the total number of active participants (*i.e.* those with account balances) in the plans investing in these funds decreased. Thus, JPMRPS / Great-West received more and more money for performing the same services for a smaller number of participants, assuring a windfall to JPMRPS / Great-West at the expense of participants in the Plan.

42. The Safeway Defendants took no action to reduce the percentage paid under the revenue sharing arrangement to account for the ever-increasing amounts held in the JPM Smartretire Passiveblend Funds.

43. Had the Safeway Defendants complied with their fiduciary duties with respect to the revenue sharing, Plaintiff and the members of the putative class would have achieved higher investment returns because they would have paid lower fees.

## VIII. DEFENDANTS' PROHIBITED TRANSACTIONS

44. JPMRPS / Great-West was and is a "party in interest" with respect to the Plan pursuant to ERISA § 3(14)(B), 29 U.S.C. § 3(14)(B), as a "person

providing services to such plan." Specifically, JPMRPS / Great-West provided record-keeping services for the Plan.

45. ERISA § 406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C), prohibits a plan fiduciary from causing the plan to engage in a transaction that constitutes any furnishing of goods, services, or facilities between the plan and a party in interest to that plan.

46. The revenue sharing arrangement set forth above constitutes a transaction prohibited by this section, as it involves among other things the exchange of services by JPMRPS / Great-West to the Plan.

47. ERISA § 408(b)(2), 29 U.S.C. § 1008(b)(2), provides for certain exemptions to the prohibition on the specified transactions. Any applicable exemption, however, requires that the compensation received by the party in interest be reasonable.

48. The revenue sharing arrangement described above does not qualify for any exemption under ERISA § 408(b)(2), 29 U.S.C. § 1008(b)(2), because JPMRPS / Great-West received more than reasonable compensation for the record-keeping services they provided. This is evidenced by, among other things, the facts that such record-keeping services could have been provided at a lower cost if they were calculated on a per-participant basis as opposed to on an asset-based basis and that the amounts invested in the JPM Smartretire Passiveblend Funds, and thus the revenues sharing payments for those funds, more than doubled while the number of participants with account balances in the Plan and related plans decreased.

## IX.   CLASS ALLEGATIONS

49. Plaintiff brings this action as a class action under Rules 23(a) and 23(b)(1) or, in the alternative, 23(b)(3) of the Federal Rules of Civil Procedure on behalf of a class of similarly-situated person ("the Class"):

All participants in the Plan who invested in any of the JPM Smartretire Passiveblend Funds from the time these funds were first offered by the Plan in 2011 until the time of trial (the "Class Period").

50. The members of the Class are so numerous that joinder of all members is impracticable. As of the year ending 2011, the Plan had 38,199 participants with account balances. A large number of these participants were invested in one of the JPM Smartretire Passiveblend Funds.

51. Common questions of law and fact exist as to all members of the Class and predominate over questions solely affecting individual members of the Class. Among such questions are:

(a) Whether the Safeway Defendants breached their fiduciary duties with respect to the decision to initially offer, and continue to offer, the JPM Smartretire Passiveblend Funds;

(b) Whether the Safeway Defendants breached their fiduciary duties with respect to agreeing to the revenue sharing arrangement with JPMRPS / Great-West with respect to the JPM Smartretire Passiveblend Funds and for continuing that arrangement;

(c) Whether Defendants engaged in a transaction prohibited by ERISA by causing the Plan to enter a transaction by which a party in interest to the Plan received compensation for providing services to the Plan;

(d) Whether any exemption to ERISA's prohibition on certain transactions apply, and specifically whether the compensation received by JPMRPS / Great-West for record-keeping services was reasonable; and

(e) The remedies to which the Class and Plan are entitled as a result of Defendants' breaches of fiduciary duty and engaging in transactions prohibited by ERISA.

52. There are no substantial individual questions among the Class members as to the merits of this action.

53. Plaintiff's claims are typical of the claims of the members of the Class, as Plaintiff and all members of the Class were harmed by Defendants' common course of wrongful conduct with respect to the entire slate of JPM Smartretire Passiveblend Funds offered to participants in the Plan.

54. Plaintiff has been injured by the breaches of fiduciary duty and prohibited transactions alleged above and is committed to fairly, adequately, and vigorously representing and protecting the interests of the members of the Class.

55. Plaintiff has retained counsel competent and experienced in ERISA class actions.

56. Neither Plaintiff nor his counsel have any interests that conflict with those of the Class and Plaintiff is otherwise an adequate representative of the Class.

57. Class certification is appropriate pursuant to Fed. R. Civ. Proc. 23(b)(1) because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendants, and/or because adjudications regarding individual members of the Class would as a practical matter be dispositive of the interests of non-party members of the Class.

58. In the alternative, class certification is appropriate under Fed. R. Civ. Proc. 23(b)(3) because common issues of law and fact predominate over questions affecting only individual members of the Class. The only individualized issues will be the amount of damage each member of the Class incurred from the misconduct alleged above and such damages can be readily calculated based on business records maintained by Defendants and/or the Plan.

59. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Defendants injured Plaintiff and the members of the Class by causing them to pay excessive and improper fees, thus diminishing their investment returns. This diminution of returns is, on an individual level, small and difficult to detect but in the aggregate is substantial. Individual

participants who have invested in the JPM Smartretire Passiveblend Funds have an insufficient stake in the outcome of this matter to devote substantial resources to pursue it.

60. The names and address of members of the Class are available from Defendants and/or the Plan. The identity of class members is readily ascertainable and adequate notice can easily be provided to members of the Class if required.

## X.   CLAIMS FOR RELIEF

### COUNT ONE – THE SAFEWAY DEFENDANTS' BREACHES OF FIDUCIARY DUTY

61. Plaintiff repeats and realleges each of the allegations in the foregoing paragraphs as if fully set forth in this Count One.

62. ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires that plan fiduciaries discharge their duties to the plan solely in the interests of plan participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of a similar enterprise.

63. The Safeway Defendants breached the duty of prudence in connection with selecting the JPM Smartretire Passiveblend Funds as investment options because, among other things, these funds charged higher fees than comparable funds, had no meaningful record of performance so as to indicate that higher performance would offset this difference in fees, and was managed by a company affiliated with the Plan's recordkeeper, JPMRPS, and trustee, Chase.

64. The duty of prudence also requires that plan fiduciaries investigate whether revenue sharing is a reasonable and cost-effective way to pay for administrative services incurred in connection with a plan, such as record-keeping services.

65. The Safeway Defendants breached the duty of prudence in connection with agreeing to the revenue sharing arrangement for the JPM Smartretire

Passiveblend Funds because that arrangement resulted in excessive fees for record-keeping services as compared to a per-participant fee for such services.

66. This breach of duty became even more pronounced as the amounts invested in the JPM Smartretire Passiveblend Funds, and thus the revenue paid out to JPMRPS / Great-West, more than doubled between 2011 and 2014, while the total number of active participants in the plans investing in these funds decreased. The Safeway Defendants took no action to reduce the asset-based charge under the revenue sharing arrangement to account for the ever-increasing amounts held in the JPM Smartretire Passiveblend Funds.

67. The Safeway Defendants' breaches caused Plaintiff and the members of the Class to pay excessive and/or improper fees, thus reducing their investment returns.

68. Under ERISA § 409, 29 U.S.C. § 1109, and 502(a), the Safeway Defendants are liable to make good to Plaintiff, the Class, and the Plan the losses they experienced because of the Safeway Defendants' breaches of fiduciary duty. And under ERISA § 502(a)(1) & (2), 29 U.S.C. § 1132(a)(1) & (2), Plaintiff as a participant in the Plan may bring a civil action to establish this liability.

69. Further, under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the Court may also award equitable relief to Plaintiff, the Class, and the Plan to prevent the continuation of the Safeway Defendants' breaches of their fiduciary duties.

**COUNT II – DEFENDANTS' PROHIBITED TRANSACTIONS**

70. JPMRPS / Great-West was and is a "party in interest" with respect to the Plan pursuant to ERISA § 3(14)(B), 29 U.S.C. § 3(14)(B), as a "person providing services to such plan."

71. ERISA § 406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C), prohibits a plan fiduciary from causing the plan to engage in a transaction that constitutes any furnishing of goods, services, or facilities between the plan and a party in interest to that plan.

72. The revenue sharing arrangement set forth above constitutes a transaction prohibited by this section, as it involves among other things the exchange of services by JPMRPS / Great-West to the Plan.

73. ERISA § 408(b)(2), 29 U.S.C. § 1008(b)(2), provides for certain exemptions to the prohibition on the specified transactions. The revenue sharing arrangement described above does not qualify for any exemption under ERISA § 408(b)(2), 29 U.S.C. § 1008(b)(2), because JPMRPS / Great-West received more than reasonable compensation for the record-keeping services they provided.

74. Under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the Court may award equitable relief to Plaintiff, the Class, and the Plan against the Safeway Defendants and Great-West to remedy and prevent the continuation of the transactions prohibited by ERISA § 406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

A. A determination that this action may be maintained as a class action under Federal Rule of Civil Procedure 23, and that Plaintiff shall serve as class representative;

B. A Declaration that the Safeway Defendants and each of them breached ERISA fiduciary duties owed to the Plaintiff, the Class, and the Plan;

C. An Order compelling the Safeway Defendants to reimburse Plaintiffs and members of the Class for all losses resulting from their breaches of fiduciary duty;

D. An Order awarding damages to Plaintiffs and members of the Class, with interest as provided by law;

E. An Order enjoining the Safeway Defendants from any further violations of their ERISA fiduciary obligations;

F.  A Declaration that the Safeway Defendants and JPMRPS / Great-West and each of them engaged in transactions prohibited by ERISA not subject to any exemption;

G.  An Order compelling the Safeway Defendants and Great-West to reimburse Plaintiff, the members of the Class, and the Plan for any compensation received by JPMRPS / Great-West as a result of transactions prohibited by ERISA;

H.  An Order enjoining the Safeway Defendants and Great-West from continuing to engage in transactions prohibited by ERISA;

I.  An Order awarding costs under 29 U.S.C. § 1132(g);

J.  An Order awarding attorneys' fees under 29 U.S.C. § 1132(g) or as provided by law;

K.  An Order for other appropriate equitable relief against Defendants; and

L.  Such other and further relief as the Court may deem just and proper.

Dated: August 25, 2016                    Respectfully submitted,


                                          */s/ Kyle G. Bates*

                                          Todd M. Schneider
                                          Jason H. Kim
                                          Kyle G. Bates
                                          SCHNEIDER WALLACE COTTRELL
                                          KONECKY WOTKYNS LLP
                                          2000 Powell Street, Suite 1400
                                          Emeryville, California 94608
                                          Telephone: 415-421-7100
                                          Facsimile: (415) 421-7105
                                          tschneider@schneiderwallace.com
                                          jkim@schneiderwallace.com
                                          kbates@schneiderwallace.com

1 | Garrett W. Wotkyns (to be admitted pro hac vice)
2 | John N. Nestico (to be admitted pro hac vice)
3 | SCHNEIDER WALLACE COTTRELL KONECKY WOTKYNS LLP
4 | 8501 North Scottsdale Road, Suite 270
5 | Scottsdale, Arizona 85253
6 | Telephone: (480) 428-0142
  | Facsimile: (866) 505-8036
7 | gwotkyns@schneiderwallace.com
8 | jnestico@schneiderwallace.com