Todd M. Schneider (SBN 158253)
Jason H. Kim (SBN 220279)
Kyle G. Bates (SBN 299114)
James A. Bloom (SBN 311051)
SCHNEIDER WALLACE COTTRELL
KONECKY WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel:  (415) 421-7100
Fax:  (415) 421-7105
tschneider@schneiderwallace.com
jkim@schneiderwallace.com
kbates@schneiderwallace.com
jbloom@schneiderwallace.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| DENNIS M. LORENZ, On Behalf of the Safeway 401(k) Plan,<br><br>Plaintiff,<br><br>vs.<br><br>SAFEWAY, INC et al.,<br><br>Defendants. | Case No.: 3:16-cv-04903-JST<br><br>**PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE OPINION AND TESTIMONY OF STEVEN K. GISSINER AS EXPERT WITNESS FOR DEFENDANTS**<br><br>Trial Date: May 6, 2019<br>Judge:    Hon. Jon S. Tigar<br><br>Third Am. Compl. Filed: Mar. 31, 2017 |

Pursuant to Fed. R. Civ. P. 37(c)(1) and Fed. R. Evid. 702, Plaintiffs Dennis M. Lorenz and Maria Karla Terraza hereby move the Court in limine to preclude Steven Gissiner from testifying as an expert witness for Defendants.[1]

Gissiner opines that the administrative fees paid by the Safeway Plan were in line with fees paid by other "comparable" plans, and that "nonstandard administrative services" were provided to the Safeway Plan, justifying higher fees. As support, Gissiner relies on generalized references to his experience and comparisons to certain anonymous "OHC Plans." However, Gissiner has provided no source documents—such as administrative service agreements for the OHC Plans— that could be used to verify his conclusions. Thus apart from uncorroborated statements from Gissiner himself, it is impossible to test whether the OHC Plans or the fees Gissiner claims they paid are comparable to the Safeway Plan, whether the data Gissiner relied on is an accurate reflection of the fees paid by or services provided to the OHC Plans, or even the sources the data.

Defendants' failure to produce the underlying records which Gissiner used in compiling the data he relied on violates the disclosure obligations imposed by Rule 26(a)(2)(B). Because the comparisons based on that data are at the heart of Gissiner's opinion, the appropriate remedy is to preclude Gissiner's testimony. Moreover, under Rule 702, the District Court should not permit an expert to provide opinion testimony supported by nothing but the expert's own *ipse dixit*.

## FACTUAL AND PROCEDURAL BACKGROUND

### Gissiner's Report and Deposition Testimony

Gissiner opined that "[b]ased on my benchmarking analysis and review of the Safeway Plan, the Plan's total costs and administrative fees paid … were reasonable and well within the range of

---

[1] Pursuant to the Court's standing order that a party seek a stipulation before making a motion in limine, Plaintiff's counsel reached out to Defense counsel on April 3, 2019. Defense counsel refused to stipulate to the relief requested.

costs paid by comparable plans, including plans that I identified during the course of my work with OHC ('OHC Plans')" as well as certain other plans. Expert Report of Steven K. Gissiner (May 22, 2018) (the "Gissiner Report"), attached to the Declaration of James A. Bloom ("Bloom Declaration") as Exhibit A, at 7 ¶ 16. The term "OHC" is, apparently, a reference Gissiner's consulting firm, Orchard Hills Consulting. Gissiner Report at 3 ¶ 8. Gissiner explains that, using "OHC proprietary data collected from various defined contribution plan fee benchmarking projects that [he had] performed," the OHC plans that he relied on for his benchmarking analysis were "13 plans that are similar to the Safeway Plan in terms of total assets or number of participants with account balances." Gissiner Report at 41-42 ¶ 68.

At his deposition, Gissiner testified that "for every benchmarking exercise" that he performs, he "review[s] the service agreements for that plan." Excerpts of Deposition of Steven Gissiner, ("Gissiner Depo."), at 206:24-207:2, attached to the Bloom Declaration as Exhibit B. He also testified that "[a]t the time that [he] would have done the benchmarking study," he "review[ed] all of the service agreements" for "the 13 plans that were the comparator plans" in his report. *Id.* at 207:11-16. Gissiner qualified his report by stating that "Plan cost benchmarking is not intended to determine what the specific cost of a plan should be, and one cannot assume that the costs of providing services for participants with different account balances are the same, or determine whether fees are reasonable or unreasonable without considering plan provisions, servicing requirements, asset allocations, and all of the other factors that influence plan costs." Gissiner Report at 41 ¶ 67, a qualification Gissiner emphasized at his deposition. *E.g.*, Gissiner Depo. at 148:4-15; Gissiner Depo. at 61:6-12 ("Q. … [I]n order to evaluate the reasonableness of fees paid to administrative service providers, one must consider, among other things, the range of services provided in exchange for such fees; is that correct?  A. That's correct.").

Gissiner also opined that "[b]ased on my experience reviewing and advising on administrative services provided to defined contribution plans, the breadth of services provided by JPMRPS and Great-West RPS to the Safeway Plan exceeded those typically provided by administrative service providers." Gissiner Report at 32, ¶ 53, *see also id.* at ¶¶ 53-57. While Gissiner identifies several services that, he contends, are nonstandard (such as creating a website for plan participants and forwarding proxy information about Safeway stock), he cites no evidence in his report to support his conclusion that these services are not typically available to participants in comparable plans. At his deposition, Gissiner explained that he concluded these services were nonstandard based on two factors—his experience and JPM's definition of nonstandard services in the service agreement with the Safeway Plan. Gissiner Depo. at 60:24 - 64:13.

**Plaintiffs' Request for Additional Information**

On June 4, 2018, prior to Gissiner's deposition, Plaintiff requested additional information about Gissiner's opinions, including, in particular, "[a]ll records in [Gissiner's] possession related to the OHC Plans identified in his report, including, but not limited to, documents supporting the conclusions he reaches about the OHC Plans." *See* Bloom Email (June 4, 2018), attached to the Bloom Declaration as Exhibit C.

Defendants "disagree[d] with the breadth" of this request, and refused to produce most of the requested documents. *See* Rudolph Email (June 7, 2018), attached hereto as Exhibit B. Defense counsel explained that they were under no obligation to produce "facts or data that Mr. Gissner may have in his possession, which he did not consider in forming his opinions." *Id.*

However, Defendants did produce a series of spreadsheets that contained the data Gissiner used for the calculations he performed regarding the OHC Plans. The spreadsheets do not identify the plan described, do not identify where Gissiner obtained the information in the sheet, or provide

any insight about the nature of the services being performed. Samples of the spreadsheets are attached to the Bloom Declaration as Exhibits D-F.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 26(a)(2)(B) requires parties who intend to rely on expert witnesses to provide a written report disclosing, among other things, "(i) a complete statement of all opinions the witness will express and the basis and reasons for them" and "(ii) the facts or data considered by the witness in forming them…." Rule 37(c)(1) "gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Rule 37(c) is a "self-executing" and "automatic" sanction. *Id.*

In addition, Federal Rule of Evidence 702 requires that, before an expert is permitted to testify, the court must find that the expert testimony "is based on sufficient facts or data;" and "is the product of reliable principles and methods." The proponent of expert testimony "has the burden to establish its admissibility." *United States v. 87.98 Acres of Land More or Less in the City. of Merced*, 530 F.3d 899, 904 (9th Cir. 2008).

The imposition of sanctions under Rule 37 and the admissibility of expert testimony under Rule 702 are within the Court's discretion. *Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1337 (9th Cir. 1985); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997).

## ARGUMENT

### A.    FRCP 26 - Failure to Disclose

Defendants failed to disclose "(i) a complete statement of all opinions the witness will express and the basis and reasons for them" and "(ii) the facts or data considered by the witness in forming them…." as required by Rule 26.

There is no dispute that Gissiner compiled the data about the OHC Plans based on his review of documents such as service agreements and other documents specific to each of the OHC Plans. Defendants have refused to produce the service agreements or any other documents specific to the OHC Plans that Gissiner used in compiling the data that he considered.

The failure to produce these documents is striking in light of the qualification in Gissiner's report that "one cannot assume that the costs of providing services for participants with different account balances are the same, or determine whether fees are reasonable or unreasonable without considering plan provisions, servicing requirements, asset allocations, and all of the other factors that influence plan costs." Gissiner Report at 41 ¶ 67. Moreover, Gissiner emphasized at his deposition that "[a]t the time that [he] would have done the benchmarking study," he "review[ed] all of the service agreements" for "the 13 plans that were the comparator plans" in his report. Gissiner Depo. at 207:11-16.

When Rule 26 was amended in 2010, the Advisory Committee explained that "the intention is that 'facts or data' be interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients… [t]he disclosure obligation extends to any facts or data 'considered' by the expert in forming the opinions to be expressed, not only those relied upon by the expert." *See* 2010 Advisory Committee Notes to Rule 26.

Here, Defendants have never produced the service agreements and other documents that Gissiner relied on when he analyzed the data contained in his report. Exclusion of Gissiner as an expert is an appropriate sanction for the failure to disclose this information. In *Rhodes v. Energy Marine LLC*, No. CV-14-08206-PCT-JJT, 2016 WL 8199310, at *7 (D. Ariz. Sept. 19, 2016), the court excluded an expert when the report failed to disclose a "complete statement of all opinions the witness will express and the basis and reasons for them," included "unsubstantiated calculations

and predictions" and did "not begin to demonstrate" that the documents the expert claimed to have reviewed "provide a sufficient basis for his estimates."

Without the services agreements and other sources that Gissiner used to compile the fee information underlying his opinion, cross examining Gissiner about his methods or conclusions is far more difficult, thereby prejudicing Plaintiffs. *See Yeti by Molly*, 259 F.3d at 1107 (where defendant did not disclose an expert report until one month before trial that the delayed disclosure was not harmless given the impending trial date); *Ohio Six Ltd. v. Motel 6 Operating L.P.*, No. CV 11-08102 MMM (EX), 2013 WL 12125747, at *16 (C.D. Cal. Aug. 7, 2013) (excluding expert where untimely disclosure of the basis for the expert's opinion prejudiced the opposing party); *Olson v. Montana Rail Link, Inc.*, 227 F.R.D. 550, 551–52 (D. Mont. 2005), (excluding an expert from testifying where the expert report "contained opinions based on testing performed by [the expert]" but did not timely produce the "data and other information relied on" by the expert).

Again, Rule 37(c) is a "self-executing" and "automatic" sanction. *Yeti by Molly*, 259 F.3d at 1106. Defendants' failure to produce the requisite data is alone enough to warrant exclusion. Here, however, Plaintiffs specifically reached out to Defendants to request the data, and Defendants nevertheless refused to produce it. Accordingly, exclusion of the opinion is the most appropriate sanction under Rule 37(c).

**B.     FRE 702 - Insufficient Facts or Data**

Gissiner's failure to disclose the documents that underpin his conclusions, and his general reliance on his experience, create an additional problem. Fed. R. Evid. 702 permits expert testimony only where "the testimony is based on sufficient facts or data" and "the testimony is the product of reliable principles and methods." The proponents of expert testimony—in this case, Defendants—bear the burden of proving admissibility. *Lust By & Through Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

As the Supreme Court has explained, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co.*, 522 U.S. at 146. The Ninth Circuit has explained that "[t]he reasoning between steps" in an expert's theory "must be based on objective, ***verifiable*** evidence and scientific methodology of the kind traditionally used by experts in the field." *Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 607 (9th Cir. 2002) (emphasis added). Moreover, "[t]he court must assess the expert's reasoning or methodology, using as appropriate criteria such as ***testability***, publication in peer-reviewed literature, known or potential error rate, and general acceptance." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014) (emphasis added).

Gissiner's opinions are impossible to verify or test. Gissiner's opinions are based on either (a) opaque, anonymous data that Gissiner himself would not attempt to evaluate in the absence of service agreements and additional plan specific documents, or (b) Gissiner's experience. This is classic *ipse dixit*—Gissiner asks the Court to believe his opinions primarily because he says so, with no meaningful testable or verifiable yardstick to evaluate his conclusions. Exclusion of Gissiner's testimony is the appropriate remedy. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 978 F. Supp. 2d 1053, 1067 (C.D. Cal. 2013) (excluding expert who "relied solely or primarily on his experience" but did not "explain how that experience lead[] to the conclusions reached, why that experience [was] a sufficient basis for the opinion, and how that experience [was] reliably applied to the facts."); *see also In re Ford Tailgate Litig.*, No. 11-CV-02953-RS, 2015 WL 7571772, at *7 (N.D. Cal. Nov. 25, 2015) (excluding expert who did not "ground [their] opinions in reliable testing or reasonable methods"); *DSU Med. Corp. v. JMS Co.*, 296 F. Supp. 2d 1140, 1158 (N.D. Cal. 2003), aff'd, 471 F.3d 1293 (Fed. Cir. 2006) (excluding export report based on "*ipse dixit*" where the "analytical gap between

the data used and the opinion offered [was] far too great"); *Wendler & Ezra, P.C. v. Am. Int'l Grp., Inc.*, 521 F.3d 790, 791 (7th Cir. 2008) (affirmed exclusion of expert testimony based on "*ipse dixit*" that did not describe "what software [the expert] used, what data [the expert] fed it, what results it produced, and how alternative explanations … were ruled out.").

## **CONCLUSION**

For the foregoing reasons, Gissiner's opinions should be excluded and he should not be permitting to testify at trial.

DATED: April 5, 2019            Respectfully submitted,

By:     */s/ James A. Bloom*
      Todd M. Schneider
      Jason H. Kim
      Kyle G. Bates
      James A. Bloom
      SCHNEIDER WALLACE COTTRELL
      KONECKY WOTKYNS LLP
      2000 Powell Street, Suite 1400
      Emeryville, California 94608
      Telephone: (415) 421-7100
      Facsimile: (415) 421-7105
      tschneider@schneiderwallace.com
      jkim@schneiderwallace.com
      kbates@schneiderwallace.com
      jbloom@schneiderwallace.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 5, 2019, I electronically filed the foregoing document with the Clerk of the Court using the Court's CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

Copies of the foregoing have also been provided by email and first class mail to all counsel of record in *Terraza v. Safeway Inc.*, *et al.*, No. 16-cv-3994 (N.D. Cal.) who are not participants in the CM/ECF for this case.

>                             */s/ James A. Bloom*
>                             James A. Bloom