UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS M. LORENZ,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>SAFEWAY, INC., et al.,<br><br>　　　　Defendants. | Case No. 16-cv-04903-JST<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**UNDER SEAL**[1]<br><br>Re: ECF No. 101 |

This case concerns the administration of Defendant Safeway, Inc.'s 401(k) plan ("Safeway Plan" or "Plan"). The Safeway Plan is an employee pension benefit plan within the meaning of 29 U.S.C. § 1002(2)(A) that is covered by ERISA, and an individual account plan within the meaning of 29 U.S.C. § 1002(34). The Safeway Plan is an example of what is commonly called a "defined contribution" plan. In addition to Safeway, Plaintiff Dennis M. Lorenz names the Safeway Benefit Plans Committee ("BPC") as a defendant.[2] This case is related to another case concerning the same Plan. *Terraza v. Safeway, Inc.*, Case No. 16-cv-3994-JST.[3]

Now before the Court is Plaintiff Lorenz's motion for partial summary judgment. He asks the Court to hold that Defendants violated their fiduciary duties of prudence and loyalty as a

---

[1] The Court has filed this order under seal because it contains or refers to material subject to sealing orders. Within seven days of the filing date of this order, the parties shall file a stipulated proposed redacted version of this order, redacting only those portions of the order containing or referring to material for which the Court has granted a motion to seal and which the parties still request be sealed. The parties shall also email a PDF copy of the proposed redacted order, without any ECF headers, to jstpo@cand.uscourts.gov. The Court will review the parties' proposal and issue a redacted version of the order.
[2] The Plaintiff originally named Great-West Financial RPS LLC as a defendant, but the Court granted a motion to dismiss that entity. ECF No. 58.
[3] The *Terraza* action also names the Plan's investment advisor, Aon Hewitt Investment Consulting, Inc., and individual members of the BPC as defendants.

matter of law when they selected the JPMorgan SmartRetirement Passive Blend funds ("JPM TDFs") for inclusion in the Plan in 2010. Lorenz alleges that the decision to add the JPM TDFs was motivated by the BPC's desire to avoid having Safeway pay the administrative costs of the Plan, and to shift those costs indirectly onto Plan participants.

The Court will deny the motion.

## I. FACTUAL BACKGROUND

The facts are well-known to the parties and the Court has summarized the relevant allegations in detail in two prior orders in the *Terraza* case, ECF Nos. 65, 109, and so the Court will not elaborate them here. Because Plaintiff's motion focuses on the payment of administrative expenses, however, some background on that topic is useful.

In 2009 Defendants retained J.P. Morgan Retirement Plan Services, LLC ("JPM RPS"), an affiliate of Safeway's long-time banker, JPMorgan, to provide administrative services for the Plan. JPM RPS's fee was $67 annually per participant, collected quarterly. Recordkeeping fees were a component of administrative costs. JPM RPS's primary source of fees for these services was asset-based fees taken as a percentage of the Plan assets. These asset-based fees included revenue sharing arrangements with the Plan's investment managers, through which investment managers credited JPM RPS with a portion of the management fees they collected. The asset-based fees also included "wrappers" imposed on certain of the Plan's investment options that allowed JPM RPS to collect a percentage of the assets in that option. To the extent JPM RPS's asset-based fees in a quarter exceeded $16.75 (one quarterly assessment of the $67 fee), JPM RPS would credit the excess to a notional, non-cash plan expense account called the "Plan Expense Arrangement" or "PEA."

The Plan's arrangement with JPM RPS also included a $1 per participant, per month flat fee that was withheld from each participant's account and placed into a "Direct Participant Fee Account." The Direct Participant Fee Account could, like the PEA, be used to pay Plan expenses, including JPM RPS's fees. If both accounts were exhausted, then Safeway itself was responsible to pay the shortfall.

For some period prior to September 2010, the revenue sharing from the Plan's investment

funds was insufficient to offset the recordkeeping fees, creating the possibility that, in the future, Safeway would have had to make quarterly payments to JPMorgan to pay the shortfall amount.

In the final quarter of 2010, JPM approached Safeway's human resources department with a proposal to replace four of the Plan's current funds: three with JPM funds, and the fourth with a Well Fargo fund. Lisa Montalvo, Safeway's Benefits Director, referred the proposal to Aon Hewitt Investment Consulting, Inc., the Plan's investment advisor, which then made presentations to the BPC regarding the funds. One reason given to support the proposed change was that JPM proposed a lower annual pricing structure, assuming the Plan made the proposed fund changes. Among the changes JPM proposed was substituting its own funds for one or more Plan funds managed by other entities. The new funds promised lower administrative fees, thus decreasing the chance that Safeway would ever have to make up a shortfall – an eventuality an August 2010 Aon document called "highly likely."

The Committee ultimately adopted two of the four proposed fund changes: it changed from the BlackRock LifePath Index fund to the JPMorgan SmartRetirement Passive Blend, and it moved from the Chesapeake Core Growth fund to the Wells Fargo Strategic Growth fund. ECF No. 110-28 at 3. JPM also recommended moving from the Forward Emerald Growth fund to the JPMorgan Small Cap Growth fund, but Aon recommended against it, and the BPC did not approve that change. *Id.*

Lorenz alleges that the lower administrative fees from the JPM TDFs were offset by higher management fees – the burden of which would fall on Plan participants rather than Safeway. Also, he alleges that the selection of the JPM TDFs was not supported by enough historical performance data. He alleges the BPC and Safeway disregarded these problems, failed to conduct an adequate investigation, and approved the selection of the JPM TDFs notwithstanding a conflict of interest – which was that the change benefitted Safeway at the expense of plan participants. This, he alleges, violated Defendants' duties of loyalty and prudence.

## II. LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

3

A dispute is genuine only if there is sufficient evidence for a reasonable trier of fact to resolve the issue in the nonmovant's favor, and a fact is material only if it might affect the outcome of the case. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986)). The court must draw all reasonable inferences in the light most favorable to the nonmoving party. *Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1018 (9th Cir. 2010).

Where the party moving for summary judgment would bear the burden of proof at trial, that party "has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). Where the party moving for summary judgment would not bear the burden of proof at trial, that party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party satisfies its initial burden of production, the nonmoving party must produce admissible evidence to show that a genuine issue of material fact exists. *Id.* at 1102-03. If the nonmoving party fails to make this showing, the moving party is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

"Under ERISA, plan fiduciaries are charged with the duty of loyalty, the duty of prudence, the duty to diversify investments, and the duty to act in accordance with the documents and instruments governing the plan." *White v. Chevron Corp.*, No. 16-CV-0793-PJH, 2017 WL 2352137, at *4 (N.D. Cal. May 31, 2017) (citing 29 U.S.C. § 1104(a)(1)).

ERISA requires that a pension plan fiduciary act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). Under this "prudent person" standard, courts must determine "whether the individual trustees, at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to

4

1 structure the investment." *Donovan v. Mazzola*, 716 F.2d 1226, 1232 (9th Cir. 1983). The prudence analysis "focus[es] on a fiduciary's conduct in arriving at an investment decision, not on its results." *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 434 (3d Cir. 1996). This duty of prudence extends to both the initial selection of an investment and the continuous monitoring of investments to remove imprudent ones. *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828-29 (2015).

"Because the content of the duty of prudence turns on 'the circumstances . . . prevailing' at the time the fiduciary acts, the appropriate inquiry will necessarily be context specific." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014) (quoting 29 U.S.C. § 1104(a)(1)(B)). Put differently, the prudence inquiry is "fact intensive." *Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1078 (N.D. Cal. 2017) (citing *Tussey v. ABB, Inc.*, 746 F.3d 327, 336 (8th Cir. 2014)). "And, because it involves the application of a reasonableness standard, '[r]arely will such a determination be appropriate on a motion for summary judgment.'" *Id.* (quoting *Bd. of Trs. of S. Cal. IBEW–NECA Defined Contribution Plan v. Bank of N.Y. Mellon Corp.*, No. 09 CIV. 6273 RMB, 2011 WL 6130831, at *3 (S.D.N.Y. Dec. 9, 2011)).

### III. ANALYSIS

The essence of Plaintiff's argument is that Defendants violated their duties of loyalty and prudence as a matter of law because (1) the lowering of administrative costs was the only reason the BPC approved the JPM TDFs and (2) the investigation the BPC performed was deficient as a matter of law.

There is a dispute of fact on these issues. Concerning the reason for selecting the JPM TDFs, for example, the Plan's investment advisor recommended that Safeway select those funds "based on lower overall fees[,] simpler investment structure[,] and [the] exclu[sion of] illiquid strategies from the investment mix." ECF No. 98-5 at 8; *see also* ECF No. 110-28 at 3 ("After reviewing data indicating that the performance of the JPMorgan fund compared favorably to that of the BlackRock fund and that the JPMorgan fund was the less costly of the two, the Committee members unanimously agreed to make the proposed Target Date Fund change."); ECF No. 110-32 at 23 (Aon Hewitt, which made recommendations to the BPC, "evaluated the funds proposed by JPMorgan based on, among other things, performance comparisons of the JPMorgan Target Date

Series to custom benchmarks, its corresponding S&P Target Date indexes, and peer universes, as well as assessments of the funds' glide paths, portfolio management team and its investment process, and similar investment products provided by the same team."). There also is evidence that the BPC's decision was not merely a rubber-stamp of JPMorgan's recommendations: "the Safeway BPC declined JPMorgan RPS's proposal to replace the Forward Emerald Growth Funds with the JPMorgan Small Cap Growth Fund, as well as the three candidate funds Hewitt subsequently provided, and decided instead to retain the Forward Emerald Growth Fund based on interviews it conducted with the investment managers of the Forward Emerald Growth and a candidate fund." ECF No. 110-32 at 10.

The same is true of Plaintiff's claim for breach of the duty of loyalty. That duty requires "a fiduciary [to] discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries[ ] and . . . defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A); *White v. Chevron Corp.*, No. 16-CV-0793-PJH, 2016 WL 4502808, at *4 (N.D. Cal. Aug. 29, 2016). As defined in the Restatement (Third) of Trusts, which is helpful in "determining the contours of an ERISA fiduciary's duty," *Tibble v. Edison Int'l*, 135 S.Ct. 1823, 1828 (2015), the duty of loyalty prohibits trustees from "engaging in transactions that involve self-dealing or that otherwise involve or create a conflict between the trustee's fiduciary duties and personal interests." *Restatement (Third) of Trusts* § 78 (2007). The Supreme Court has stated that the duty of loyalty requires fiduciaries to make decisions "with 'an eye single' toward beneficiaries' interests." *Pegram v. Herdrich*, 530 U.S. 211, 235 (2000).

With regard to the duty of loyalty, there is a disputed issue of fact as to whether, or to what extent, the potential for Safeway to pay recordkeeping expenses was a factor in Defendants' decision to select the JPM TDFs. Defendants have introduced evidence that it was not. *See, e.g.*, ECF No. 111 at 4 (Boylan Decl.) ("My decision to approve these fund changes, including the selection of the JPM TDFs, was not based on the possibility that Safeway may have been responsible to make payments for the Plan's recordkeeping expenses if revenue sharing was not sufficient to offset the Plan's recordkeeping costs. My decision to move forward with these

proposed changes, including the selection of the JPM TDFs, was based on my analysis of the cost and performance of the JPM TDFs compared to the existing BlackRock funds, the structure of the JPM TDFs' funds, and additional information provided by Aon. Based on my analysis of the proposal and the replacement funds, I concluded that making these changes was in the best interest of the Plan's participants."); ECF No. 112 at 4-5 (Montalvo Decl.) ("Having participated in the analysis and investigation of these proposed changes, it is my understanding and belief from direct observation that the Committee did not base its decision to select the JPMorgan Smartretirement Passiveblend funds on whether the funds in the Accounts Payable account would be extinguished, or whether Safeway would need to make payments for the Plan's recordkeeping expenses, should any such shortfall occur (and no such shortfall did occur).").

Plaintiff's motion asks the Court to credit his proffered evidence and disregard any contrary evidence. Indeed, Plaintiff's reply brief admits as much, acknowledging that Defendant has submitted contradictory evidence, but labeling it "self-serving" and "conclusory." ECF No. 118-2 at 8. Notwithstanding Plaintiff's use of pejorative labels, there is a dispute of material fact that is fatal to Plaintiff's motion. At the summary judgment stage, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in the light most favorable to the non-moving party. *K.H. v. Sec'y of the Dep't of Homeland Sec.*, 263 F. Supp. 3d 788, 793 (N.D. Cal. 2017).

Accordingly, these issues are not amenable to resolution on summary judgment, as Plaintiff probably discovered when he read the relevant cases; none of the cases he cites involves the grant of summary judgment to an ERISA plaintiff. The closest he comes is *Tibble v. Edison Int'l*, in which the court found that the defendant's decision to invest in retail-class shares instead of institutional-class shares of the same fund violated its duty of prudence – but that was after a trial. No. CV 07-5359-SVW (AGRx), 2017 WL 3523737, at *11 (C.D. Cal. Aug. 16, 2017). His other two cases on this point discuss the general legal principles appropriate to a motion to dismiss. *Henderson v. Emory Univ.*, 252 F. Supp. 3d 1344, 1351 (N.D. Ga. May 10, 2017); *Cunningham v. Cornell Univ.*, No. 16-CV-6525 (PKC), 2017 WL 4358769, at *8 (S.D.N.Y. Sept.

29, 2017). Like the *Tibble* court, this Court will resolve these issues after a contested proceeding on the merits.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is DENIED.

**IT IS SO ORDERED.**

Dated: April 10, 2019

_____
JON S. TIGAR
United States District Judge